A07A1076. THE STATE v. CONNOR et al.
(654 SE2d 461)

BARNES, Chief Judge.

The State takes this appeal from the grant of a driver's and his passenger's motions to suppress marijuana found in the trunk of their car in the wake of a traffic stop. The trial court held the search invalid on the ground that the police had impermissibly extended the traffic stop. For the reasons that follow, we affirm.

Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. *Vansant v. State,* 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). As to questions of fact and credibility, however, we construe the evidence most favorably to the upholding of the trial court's findings and judgment, which must be accepted unless clearly erroneous. *Tate v. State,* 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the record shows that while on patrol two Braselton police officers saw the defendants' car traveling northbound on Interstate 85 with a dealer tag missing its silver reflective strip. The officers also noticed that the driver was not wearing a seat belt. The officer driving the patrol car initiated his blue lights, at which time a video camera began to record the event. The officers asked to see the men's licenses, where they had been, and where they were going. One officer asked Martin, the driver, to step out of the car and stand in back of it, where he remained throughout the encounter. Connor, the

passenger, remained in the car. Martin said that they had come to Atlanta at 11:30 that morning to visit one of his cousins, while Connor said that they had come two days before to visit his aunt.

The driving officer returned to his patrol car with the licenses and attempted to contact dispatch to verify them. After a few unsuccessful attempts, the driving officer asked his partner to contact dispatch, which he did, determining that Martin's license was valid and that Connor's was not. The officer told Martin that he was going to get a written warning for not wearing his seat belt, and asked if he had any guns or knives on him. Martin said no, and the officer patted down the outside of Martin's pants. As he continued writing the warning, he asked a number of additional questions, including what Connor and Martin's relationship was, whether Martin had any explosives, bombs or detonators in the car, whether he had large sums of money, and once again whether Martin had any guns or knives. He also asked Martin whether he had any methamphetamine, cocaine, heroin, or marijuana in the car.

At this point, the officer gave Martin his license back, but did not give him the citation. The officer told Martin to stay where he was and that he would be right back. The officer then went back to the car and questioned Connor. He asked Connor again where they had been, and then questioned him about his eyes being red. The officer asked Connor if he had been drinking or smoking marijuana, and if he had ever done such. Connor responded that his eyes were always red. Connor also told the officer that his mother owned the car. The officer then returned Connor's license and went back to where Martin was waiting. He asked Martin again where they were coming from, then had him sign the seat belt warning. He gave Martin the warning, then said, "Before you guys take off, do you have any objection to my looking around in your car to see that I don't find any of the things I asked you about?" Martin consented, at which point the officer searched the front and back seats, then took the keys from the ignition and opened the trunk. Inside was a black book bag containing a gallon-sized and smaller plastic bags of marijuana, as well as scales and rubber bands. Both Martin and Connor were then arrested and charged with possession of marijuana as well as possession with intent to distribute.

As the Supreme Court of Georgia has held,

[an] officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention.

(Citations omitted.) *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004). However,

> lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, *further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter.*

(Citations and punctuation omitted; emphasis supplied.) Id.

Here, the trial court concluded that the police officers "impermissibly expanded the traffic stop without reasonable, articulable suspicion, resulting in an illegal detention of both the driver of the vehicle and the passenger." We agree.

As noted above, to pass muster under the Fourth Amendment, the continued questioning of a driver and passengers outside the scope of a valid traffic stop is permissible only when the officer has a reasonable articulable suspicion of illegal activity or when the valid traffic stop has become consensual. *Daniel*, supra, 277 Ga. at 841-842. A consensual encounter requires the voluntary cooperation of a private citizen with noncoercive questioning by a law enforcement official. Because the individual is free to leave at any time during such an encounter, he is not "seized" within the meaning of the Fourth Amendment. Id. at 842 (2). In looking to the totality of the circumstances to determine whether a reasonable person would have felt free to leave, three important factors have been given particular scrutiny: (a) whether the driver's documents have been returned to him; (b) whether the officer informed the driver that he was free to leave; and (c) whether the driver appreciated that the traffic stop had reached an endpoint. Id. at 843-845 (2) (a)-(c). It is clear that "an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him." (Citations, punctuation and footnote omitted.) Id. at 843 (2) (a).

Here, it was clear that even after the traffic stop ended, Martin and Connor were not free to go. The officer gave Martin his license back, but held on to the citation and told Martin to wait while he questioned Connor. He did not give Connor's license back until after he questioned him for the second time about his itinerary and the redness of his eyes. The officer then questioned Martin again about his whereabouts before asking him to sign the warning. Finally, he requested, "before you guys take off," permission to search the car. Clearly, the traffic stop ended once the officer gave Martin back his

license and indicated that he would only be given a warning, yet the officer continued to detain and question the men after this point. It is doubtful that any reasonable person in these circumstances would have felt free to disregard the police officers and to go about his business.

Accordingly, the trial court did not err by concluding that the continued detention was not authorized. Because Martin's consent to search the vehicle was the product of this illegal detention, it was not valid and the evidence obtained as a result of the illegal search was rightfully suppressed. We affirm the trial court's grant of the motion to suppress.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2007.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellant.

*McArthur & McArthur, John J. McArthur, Donna A. Seagraves, Amanda E. Meloun*, for appellees.

