**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 3, 2012**

# In the Court of Appeals of Georgia

A12A0750. REGISTER v. THE STATE.                                    BO-029C

BOGGS, Judge.

Following the trial court's denial of Brandy Register's motion to suppress, we granted her application for interlocutory review. Register argues that there was no reasonable suspicion to authorize a stop of the vehicle in which she was a passenger and that the evidence in her possession seized during the stop was tainted and must therefore be suppressed. We agree and reverse.

"[O]n review of a trial court's ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." (Citations and punctuation omitted.) *Wilder v. State*, 290 Ga. 13, 15 (2) (717 SE2d 457) (2011).

The evidence is undisputed here. The police chief for the City of Dublin, Georgia, received a phone call from an anonymous caller who stated that they had observed what they believed was a drug transaction "at the Friendly Gus located on 441 North." The caller stated that he observed a white male exchange "some type of pill" for money. The caller advised that the white male was traveling in a white Chevrolet van and provided the tag number of the vehicle, and also stated that a white female was a passenger in the van. The caller told the police chief that he would observe the van until the police chief could arrive at the location.

Prior to the police chief's arrival, the caller informed him that the "van had pulled out traveling south on 441." As the police chief approached, he observed the van and verified that the tag number on the van was the same tag number given to him by the caller. He then notified the 911 call center that he was following the van and asked for verification of the tag number. He also asked for a "marked unit" to assist him.

The van made several turns leading the police chief to believe that the driver "appeared to be evading [him]," although he acknowledged that the driver did not commit any traffic violations. He stopped the van, and approached the driver whom he knew as Travis Register. The chief testified that he was familiar with Travis

2

because of his "extensive history of narcotic transactions and dealing with narcotics." He also recognized the passenger as Brandy Register and was familiar with her for this same reason.

The police chief asked Travis if he could search the van and Travis consented. The second officer who arrived to assist the police chief asked Brandy to step out of the van and come toward his vehicle. This officer testified that he was also familiar with both Travis and Brandy. He stated that after having some conversation with Brandy at this vehicle; she cooperated and

> we had been told about what had happened at the store about the citizen, what he had said. I basically talked to Brandy and told her the - - you know, what the allegations were. She was very cooperative with me. She retrieved a gold case out of her bra on the left side . . . which contained Xanax and Oxycodone.

The trial court concluded that the details reported by the concerned citizen "including the detailed description of the vehicle, the tag number, the description of the occupants, the likely continuing criminal activity that drugs are in the possession of the occupants of the vehicle, and the continuing observations of the concerned citizen and communication with police," gave police "articulable suspicion to stop the vehicle [and] . . . articulable suspicion to investigate possession of narcotics."

On appeal, Brandy argues that the trial court erred in finding that the police chief had a reasonable articulable suspicion to authorize a stop of the vehicle in which she was a passenger. The stop of the vehicle was a second-tier encounter requiring officers to have reasonable suspicion of criminal activity. See generally *Hines v. State*, 308 Ga. App. 299, 301 (1) (707 SE2d 534) (2011). And "[a]lthough a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect, reliability may be established if the details are corroborated by the observations of the police." (Citations, punctuation and footnote omitted.) *State v. Dukes*, 279 Ga. App. 247, 250 (630 SE2d 847) (2006).[1]

---

[1]The State labels the caller here as a "concerned citizen." It is true that "when hearsay information is supplied by an *identified* interested citizen, the citizen's credibility is not as suspect and the analysis is not as stringent as when information is given by an anonymous tipster; a law-abiding concerned citizen has a built-in credibility and is deemed to be reliable." (Citation omitted; emphasis supplied.) *Yearwood v. State*, 239 Ga. App. 682, 683 (521 SE2d 689) (1999); see also *Hudson v. State*, 253 Ga. App. 210, 211 (558 SE2d 420) (2001) (law-abiding citizen who provided tip was identified and testified at trial). But in this case, the caller was not identified and is therefore considered an anonymous tipster. Compare *Hudson*, supra.; *Riding v. State*, 269 Ga. App. 289, 291 (603 SE2d 776) (2004) (tip was from concerned citizen where individual reported to police in person).

> [T]he information corroborated must include a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. In short, the information corroborated will generally need to be a prediction of future behavior, . . . or something similar -- that is, inside information not available to the general public.

(Citations and punctuation omitted.) *VonLinsowe v. State*, 213 Ga. App. 619, 621 (1) (445 SE2d 371) (1994). Moreover, we have held that even where police do not confirm future actions, an anonymous caller's tip may otherwise exhibit sufficient indicia of reliability to justify a stop. *Britton v. State*, 220 Ga. App. 120, 121-122 (469 SE2d 272) (1996).

The tip here lacked moderate indicia of reliability as it provided no prediction of future behavior or other inside information that could be corroborated by police. It was therefore not sufficiently reliable to justify a stop of the vehicle in which Brandy was traveling. See id. (officer lacked reasonable suspicion to detain defendant where tip did not predict future behavior and provided no information not available to general public); see also *Smith v. State*, 288 Ga. App. 87, 88-89 (653 SE2d 510) (2007) (although officers had received anonymous tips that defendant was engaged in drug activity, those tips had not been corroborated and no evidence showed

reliability of tips); compare *Alabama v. White*, 496 U. S. 325, 331-332 (110 SC 2412, 110 LE2d 301) (1990) (under totality of circumstances, details predicted future behavior and thus tip exhibited sufficient indicia of reliability to justify stop when verified by police); *Daniels v. State*, 278 Ga. App. 263, 265-266 (1) (628 SE2d 684) (2006) (relying on *White*, supra) (in addition to facts easily obtained at time of tip, caller predicted future actions of third parties such as precise time and route of travel of occupants of correctly described vehicle); *Britton*, supra, 220 Ga. App. at 121-122 (anonymous caller demonstrated some ability to predict future behavior and indicated his knowledge was based on personal observations; prior reports of drug activity corroborated information provided by caller which would not have been known by general public). The taint of the illegal stop in this case requires the suppression of the contents of the gold case possessed by Brandy as there were no intervening circumstances or events to purge the taint of the illegal stop. See *Smith*, supra, 288 Ga. App. at 89 (although defendant consented to search, it was direct product of preceding illegality). We must therefore reverse.

*Judgment reversed. Doyle, P. J., and Andrews, J., concur.*

6