**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A0853. HEARD v. THE STATE.

PHIPPS, Chief Judge.

We granted James Heard's application for interlocutory review of the trial court's order denying his motion to suppress evidence found during a stop of his vehicle. For the reasons that follow, we reverse.

> [I]n reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings will not be disturbed if any evidence supports them; but the court's application of the law to undisputed facts is reviewed de novo.[1]

---

[1] *Lewis v. State*, _ Ga. App. _ (747 SE2d 867) (2013) (punctuation and footnotes omitted); see *State v. Hammond*, 313 Ga. App. 882, 884 (723 SE2d 89) (2012).

So viewed, the evidence in this case showed that on July 24, 2009, a police captain informed a patrol officer that he had received "some complaints about illegal narcotics," and that the officer should be on the lookout for an "older model, two-wheel drive, blue Chevy S-10" vehicle; the captain gave the officer no additional information.

Later that evening, the patrol officer saw a vehicle matching that description and began following it. He noticed a 2007 registration decal on the license plate, but he saw no current (2009) decal. The officer initiated a traffic stop based on the suspected tag violation.[2]

The patrol officer approached Heard, who was the vehicle's driver and sole occupant, and told him that he had stopped the vehicle because of the 2007 decal. Heard replied that he had a valid decal. At the officer's request, Heard produced his driver's license and proof of insurance. The officer observed that Heard was shaking,

_____

[2] See OCGA §§ 40-2-8 (b) (pertinently providing that any vehicle which is required to be registered and which does not have attached to the rear thereof a numbered license plate and current revalidation decal affixed to a corner or corners of the license plate as designated by the commissioner, if required, shall be stored at owner's risk and expense); 40-2-8 (2) (A) (pertinently providing that it shall be a misdemeanor to operate any vehicle required to be registered in the State of Georgia without a license plate properly validated).

and he asked Heard if he was nervous. Heard replied that he was not. While the patrol officer was speaking with Heard, two other officers walked up to Heard's vehicle; one stood next to the passenger's door, while the other stood near the vehicle's cargo area.

The patrol officer walked back to the patrol vehicle and, as he did so, he saw that Heard's license plate had a current decal affixed; the officer testified that the plate was bent and the decal was "curled up" on the "wrong" or "left" side of the plate.[3] The officer "began running information through GCIC and NCIC, tag information, driver's license information," and outstanding warrant information. After the checks were completed and no "issues" were revealed, the officer returned to Heard's vehicle and handed Heard his driver's license and insurance card. The officer testified that, at that point, his traffic investigation had ended and "[h]ad [Heard] denied consent, he would have been free to leave."

Upon returning Heard's documents, the officer told Heard that he had stopped him because he had seen a 2007 decal on the license plate and that "normally, what

---

[3] Notably, in its brief the state has cited no law requiring the decal to be affixed to the right side of the license plate.

you do is like when you get the new green tag, you put it on top." The officer continued, "Now that I get up here, you're pretty nervous." The officer asked Heard if there was any reason he was so nervous. Heard replied that the blue lights and the traffic stop made him nervous. The officer asked Heard if he was nervous because he had illegal narcotics or weapons in the vehicle. Heard denied having such items.

The officer next asked Heard if he could search the vehicle. Heard replied that he did not want the vehicle searched, and then stepped out of the vehicle.[4] The officer frisked Heard for weapons and then asked Heard again if he could search the vehicle. This time, Heard consented. The search of the vehicle yielded a small tube containing six pieces of suspected crack cocaine. Heard was arrested and charged with possession of cocaine with intent to distribute. A total of about four minutes elapsed from the time Heard stopped his vehicle to the time he consented to the search.

Heard moved to suppress the evidence seized from the vehicle, arguing that, among other things, the officer had prolonged the traffic stop without a reasonable

---

[4] Heard did not testify at the hearing, and his reason for exiting the vehicle at that time is not clear from the hearing transcript. However, in the audio-videotape recording of the stop (which recording was admitted into evidence and played at the hearing), when the officer commented that Heard's exit from the vehicle was a sign of his nervousness, Heard replied that he had exited the vehicle because the officer told him to do so; the officer responded that Heard had misunderstood him.

suspicion of criminal activity. The trial court denied the motion, finding that the stop was valid based on the suspected tag violation, that the detention had not been unreasonably long, and that Heard had consented to the search.

1. Heard does not dispute that the initial traffic stop for the suspected tag violation was valid.[5] Instead, he contends that the officer prolonged the traffic stop to conduct a drug investigation without having a legal basis for doing so, and that the trial court thus erred in denying his motion to suppress. We agree.

> Upon this Court's review, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A reasonable time to conduct a traffic stop includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning. A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.[6]

---

[5] See generally *Humphreys*, supra at 366-367 (appellant's motion to suppress based on lack of a basis to stop the vehicle was properly denied because officer was authorized to stop vehicle based on a perceived traffic violation).

[6] *Nash v. State*, _ Ga. App. _ (746 SE2d 918) (2013) (citations and punctuation omitted).

5

"Once the tasks related to the investigation of the traffic violation and processing of the traffic citation have been accomplished, an officer cannot continue to detain an individual without articulable suspicion."[7] "Once the purpose of that [traffic] stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention."[8] "[I]f [an] officer continues to detain [an individual] after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop."[9]

Here, the officer testified that the traffic investigation ended when he determined that the vehicle's registration was valid and that, absent consent to search, Heard was "free to leave" when the officer returned his documents. In fact, the officer

---

[7] *Weems v. State*, 318 Ga. App. 749, 752 (1) (734 SE2d 749) (2012) (citation and punctuation omitted); see also *State v. Connor*, 288 Ga. App. 517, 519 (654 SE2d 461) (2007) (noting that the continued questioning outside the scope of a valid traffic stop is permissible only when the officer has a reasonable articulable suspicion of illegal activity or when the valid traffic stop has become consensual). We note that there is no claim that the continued questioning of Heard was consensual.

[8] *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006) (citation and punctuation omitted); *Richbow v. State*, 293 Ga. App. 556, 558 (667 SE2d 418) (2008).

[9] See *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009).

6

could lawfully verify the registration, driver's license and insurance information, and check for outstanding warrants; but any subsequent interrogation or request for consent had to be supported by reasonable suspicion of criminal activity.[10]

The officer expressly confirmed at the hearing that after his investigation of the suspected traffic violation had ended, he "extended the detention by asking Heard questions about his nervous behavior," and that he was "then launching into a drug investigation." The officer testified that he asked those questions because he thought there might be contraband in the vehicle; he said that his suspicion was based on Heard's nervous behavior and the lookout information he (the officer) had received before the traffic stop.

In this case, the basis of the officer's suspicion was insufficient to justify the continued or second detention.[11] The officer had no information about the reliability

_____

[10] See *Felton*, supra; see generally *Nash*, supra.

[11] See *Register v. State*, 315 Ga. App. 776, 778 (728 SE2d 292) (2012) (a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity; but if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect, reliability may be established if the details are corroborated by the observations of the police; information corroborated must include a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted); *Dominquez v. State*, 310 Ga. App. 370, 374-375 (714 SE2d 25) (2011); *McSwain v. State*, 240 Ga. App. 60, 61-62 (522 SE2d

of the lookout information, such as who had provided the information to the captain or how recently it had been provided.[12] And the officer was given only a general description of the vehicle, not information sufficiently detailed that it would have allowed him to verify that the information was inherently reliable.[13]

Nervousness is not sufficient to justify an investigative detention.[14] Even when we consider together the lookout information and Heard's nervousness, we cannot conclude that the officer was aware of circumstances sufficient to create a reasonable suspicion that Heard was involved in criminal activity other than the suspected traffic violation.[15]

---

553) (1999) (anonymous tip that a light green, four-door Honda Accord, with a specific license plate number, occupied by four males and headed northbound on I-95 from Florida to one of the Carolinas, might have some contraband in the trunk, did not support a reasonable suspicion of criminal activity).

[12] See *Tiller v. State*, 261 Ga. App. 363, 365 (582 SE2d 536) (2003) (as a general rule, information from a tipster of unknown credibility does not provide reasonable grounds upon which to detain a person for investigative purposes).

[13] See *Slocum*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004); see generally *Register*, supra.

[14] *Dominguez*, supra at 374-375.

[15] See *Register*, supra; *Dominguez*, supra; *Nunnally v. State*, 310 Ga. App. 183, 188 (2) (713 SE2d 408) (2011).

The state asserts that "the stop was not unlawfully prolonged as . . . no more than four minutes" elapsed from the time Heard stopped his vehicle until he consented to the search.

However, in assessing the reasonableness of an investigative stop, "[n]o 'bright-line' or rigid time limitation is imposed."[16] In considering whether the length of a detention was reasonable, it is appropriate to examine whether, after the stop of the vehicle, "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[17] "The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning."[18]

Here, the purpose of the traffic stop had been effectuated, and no developments occurred after the vehicle was validly stopped which provided the officer with a

---

[16] *Mallarino v. State*, 190 Ga. App. 398, 401 (2) (379 SE2d 210) (1989) (citation and punctuation omitted).

[17] *Weems*, supra at 751 (1) (citation and punctuation omitted); *Nunnally*, supra at 188 (2).

[18] *Nunnally*, supra at 186 (2) (punctuation and footnote omitted).

reasonable basis to suspect that there were illegal drugs in the vehicle.[19] Yet, the officer continued to question Heard about his nervousness and whether he possessed drugs or weapons, and to seek consent to a search. The detention lasted longer than was necessary to effectuate the purpose of the stop, and was not lawful.[20] We hold that, in this case, the trial court erred in its application of the law to undisputed facts.

2. In a related argument, Heard contends that the trial court erred by finding that the search was lawful based on his consent, when, in fact, his consent was the product of an illegal detention and thus was not valid.

As discussed in Division 1,[21] the officer lacked reasonable suspicion of criminal activity to justify detaining Heard after the traffic investigation ended. Accordingly, Heard's consent to search the vehicle - given after the traffic

---

[19] See id. at 188-189 (2), n. 21.

[20] See *Weems*, supra at 752 (1); *Register*, supra; *Nunnally*, supra at 187 (2) (reversing denial of motion to suppress; the fact that eight minutes elapsed from the time the officer lawfully stopped the suspect's vehicle for a traffic violation until a drug dog arrived was not determinative of reasonableness, because there was no evidence that the detention lasted no longer than was necessary to effectuate the purpose of the stop and no evidence that the scope of the detention was carefully tailored to its underlying justification); *Felton*, supra.

[21] Supra.

investigation concluded - was the product of an illegally prolonged detention, and no circumstances intervened to purge the taint of that illegal detention.[22] The trial court erred by denying the motion to suppress.

*Judgment reversed. Barnes, P. J., Ellington, P. J., and Miller, J., concur. Andrews, P. J., Ray and Branch, JJ., dissent.*

---

[22] See *Felton*, supra; *Connor*, supra*; Smith v. State*, 288 Ga. App. 87, 89 (653 SE2d 510) (2007).

A13A0853. HEARD v. THE STATE.

BRANCH, Judge, dissenting.

The trial court did not clearly err when it concluded that the officer obtained consent to search Heard's truck after returning his documents to him and that the brief conversation giving rise to the consent did not impermissibly extend the valid traffic stop at issue here. I therefore respectfully dissent.

As the majority concedes, the initial traffic stop, undertaken for the purpose of investigating the traffic violation of driving without a valid tag, was legal, and the officer returned Heard's documents to him before seeking consent to search (pp. 3, 5). See *Humphreys v. State*, 304 Ga. App. 365, 366-367 (1) (696 SE2d 400) (2010). But the majority does not defer to the trial court's implicit determination that when the officer returned Heard's license and insurance information to him, the second-tier detention either came to an end or was not impermissibly extended. See *Brown v. State*, __Ga. __ (3) (b) (Case No. S12G1287, decided October 21, 2013) (noting requirement that an appellate court defer to a trial court's findings as to disputed facts concerning a motion to suppress).

The videotape confirms the trial court's finding, for example, that the *entire* encounter, from traffic stop to Heard's arrest for possession of crack cocaine, lasted "five or six minutes," and also supports the trial court's determination that Heard was

not being "detained" in the very short time – well under a minute – between the beginning of the officer's explanation why Heard had been stopped (including why his registration was actually in order) and the obtaining of consent to search. The United States Supreme Court has repeatedly held, moreover, that an officer may obtain valid consent to search without informing a detainee that he is free to leave:

> "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." And just as it "would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning," so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary.

*Ohio v. Robinette*, 519 U. S. 33, 39-40 (117 SCt 417, 136 LE2d 347) (1996), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218 (93 SCt 2041, 36 LE2d 854) (1973).

The fact that the officer characterized the moments after returning the documents to Heard as a "detention" does not compel the legal conclusion that it was so. Indeed, this trial court explicitly declined to construe the officer's testimony as showing that the second part of this encounter amounted to a "detention." Because this conclusion was not clearly erroneous, and because it follows that Heard's consent to search was not the product of an impermissible detention, we must affirm the

2

denial of Heard's motion to suppress. See *Hayes v. State*, 292 Ga. App. 724, 731 (2) (665 SE2d 422) (2008) (affirming denial of motion to suppress when evidence "[did] not demand a finding contrary to the trial court's determination" that an officer did not prolong a detention unduly when he obtained consent to search 30 seconds after returning driver's paperwork and issuing him a warning); *Cutter v. State*, 274 Ga. App. 589, 593-594 (617 SE2d 589) (2005) (where there was "no evidence" that a defendant driver "made any attempt to leave" after being informed that he could do so, or that officers remaining with him and waiting for the arrival of a K-9 unit threatened him in any way, a trial court did not err in concluding that the defendant was not detained before the arrival of the unit resulting in the detection of hashish in the car). Compare *State v. Thompson*, 256 Ga. App. 188, 189-190 (569 SE2d 254) (2002) (excluding evidence obtained as a result of officer's continued questioning of defendant after citation had been written and license returned to defendant, resulting in a 20-minute delay while waiting for drug dog after traffic stop had concluded).

Because I believe that the trial court did not err when it denied Heard's motion to suppress, I respectfully dissent.

I am authorized to state that Presiding Judge Andrews and Judge Ray join in this dissent.

3