**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 18, 2015**

# In the Court of Appeals of Georgia

A14A1927. DUNCAN v. THE STATE.

MILLER, Judge.

Lisa Smoak Duncan was charged with possession of methamphetamine (OCGA § 16-13-30 (a)), possession of drug-related objects (OCGA § 16-13-32.2 (a)), and speeding (OCGA § 40-6-181). Duncan filed a motion to suppress the drugs seized from her car after a traffic stop, arguing that the officer detained her beyond the time necessary to issue the speeding ticket. Following a hearing, the trial court denied Duncan's motion to suppress and her motion for reconsideration, but instead issued a certificate for immediate review. We granted Duncan's application for interlocutory review and this appeal ensued. For the reasons that follow, we reverse the trial court's ruling.

[There are] three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

(Citations and punctuation omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013). The trial court's application of the law to undisputed facts is subject to de novo review. See *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2008).

Viewing the record in the light most favorable to the trial court's ruling, the evidence shows that on the evening of October 10, 2013, a Clayton County Sheriff's Office deputy observed Duncan driving at approximately 85 miles per hour on Interstate 75, where the speed limit is 65 miles per hour. The officer stopped Duncan for speeding, approached Duncan's car, advised her of the reason for the stop, and

asked for her license. Duncan gave the officer her license and appeared nervous, shifting around in her seat and looking away. The officer went back to his patrol car, where he wrote up a speeding citation and ran Duncan's license information. Dispatch advised the officer that Duncan's license was clear and that she was on probation. Dispatch, however, could not identify why Duncan was on probation.

The officer returned to Duncan's car and asked her to step out of her vehicle. While standing at the rear of Duncan's vehicle, the officer explained the citation to Duncan. After Duncan signed the citation, the officer gave her a copy of it and returned her driver's license to her.

The officer then asked Duncan a series of questions about her probation, including why she was on probation, what were the conditions of her probation, and whether she was reporting in a timely manner. Duncan informed the officer that she was on probation for possession of methamphetamine and driving under the influence. Then, the officer asked Duncan whether she was using drugs and if she had any drugs in the car. Duncan, who appeared very nervous and had labored breathing, responded that she did not have any drugs in the car.

The officer then asked for and received Duncan's consent to search the car. A backup officer arrived approximately two minutes later, at which point the officer

3

searched the car. The search revealed a small amount of methamphetamine in a glass pipe in a zippered pouch on the passenger seat.

Duncan contends that the trial court erred in denying her motion to suppress because the officer, without reasonable suspicion, continued to detain her after the completion of the traffic stop. We agree.

In this case, there is no dispute that the initial traffic stop for speeding was valid. See *Forsman v. State*, 239 Ga. App. 612, 613 (5) (521 SE2d 410) (1999) (officer was authorized to stop driver upon witnessing driver speeding). Nonetheless, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." (Citation omitted.) *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SCt 834, 160 LE2d 842) (2005).

> To be valid, an investigative stop of a vehicle must be brief and limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.

(Punctuation and footnote omitted.) *Bennett v. State*, 285 Ga. App. 796, 798 (648 SE2d 126) (2007). Moreover,

4

[i]t is well settled that if the officer continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop.

(Punctuation and footnote omitted.) Id.; see also *Caballes*, supra, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

The State argues that the overall length of the detention – by the officer's estimate, no more than 12 minutes – was reasonable. "However, in assessing the reasonableness of an investigative stop, no 'bright-line' or rigid time limitation is imposed." (Punctuation and footnote omitted.) *Heard v. State*, 325 Ga. App. 135, 139 (1) (751 SE2d 918) (2013). Where an officer continues a traffic stop beyond the conclusion of the investigation that warranted the stop in the first place, even for a short time, that continuation is unreasonable unless the officer has reasonable suspicion of illegal activity. See *Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014); see also *Davis v. State*, 306 Ga. App. 185, 186 (1) (702 SE2d 14) (2010). Notwithstanding the State's argument, the evidence showed that the officer

5

issued Duncan's ticket, fulfilling the purpose of the traffic stop, *before* he inquired into her probation status and the contents of her car.[1]

Once the officer issued Duncan's ticket, the initial traffic stop was over and any continued inquiry constituted a second detention. See *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006); *Weems v. State*, 318 Ga. App. 749, 752 (1) (734 SE2d 749) (2012) (officer had no reason to continue detaining suspect once ticket was written).[2] To be lawful, the second detention had to be supported by reasonable suspicion. See *Rodriguez*, supra, 295 Ga. at 369 (2) (b).

Although Duncan was on probation, there was no evidence presented that she was subject to a search condition. Even if Duncan had been subject to a search condition, the officer would still have needed "reasonable or good-faith suspicion" to conduct a search because a person's probation status, alone, is not sufficient to justify a search. (Citation omitted.) *Adkins v. State,* 298 Ga. App. 229, 230 (679 SE2d 793) (2009); see also *United States v. Knights*, 534 U. S. 112, 121 (122 SCt 587, 151

[1] The State argues that the officer requested consent to search before completing the traffic stop, but this contention is belied by the officer's own uncontradicted testimony.

[2] See also *Bennett v. State*, 326 Ga. App. 577, 579 (754 SE2d 813) (2014) (physical precedent only) (trial court erred in denying driver's motion to suppress where officer never issued a ticket but instead began inquiring about drugs).

LE2d 497) (2001). Similarly, Duncan's nervous behavior, even coupled with her looking away and shifting around – conduct consistent with nervousness – was not sufficient to constitute reasonable suspicion of other illegal activity. See *Bell v. State*, 295 Ga. App. 607, 610 (2) (672 SE2d 675) (2009) (nervousness and dry mouth do not justify search); see also *State v. Thompson*, 256 Ga. App. 188, 190 (569 SE2d 254) (2002) (nervousness alone cannot establish reasonable suspicion).

Moreover, the traffic stop never became a consensual encounter. See *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009). Normally, a traffic stop ends when a police officer informs the driver that she is free to leave. See *Arizona v. Johnson*, 555 U. S. 323, 333 (II) (B) (129 SCt 781, 172 L2Ed 694) (2009). Notably, the officer never told Duncan that she was free to go and a reasonable person in her position, asked to step out of her car on the highway and interrogated by an officer, would not likely have felt free to go about her business. See *Felton*, supra, 297 Ga. App. at 37; compare *Davis*, supra, 306 Ga. App. at 187 (1).

Although a request to search made contemporaneously, or nearly so, with the fulfillment of the traffic stop does not unreasonably prolong the detention, the request must occur immediately, or almost immediately, with the conclusion of the stop. See *Davis v. State*, 303 Ga. App. 785, 787 (694 SE2d 696) (2010) (request made

7

immediately after giving warning ticket); *Hayes v. State*, 292 Ga. App. 724, 731 (2) (e) (665 SE2d 422) (2008) (request made 30 seconds after issuing ticket). Here, after the officer concluded the stop by giving Duncan the citation and returning her license, he interrogated Duncan about her probation status, conditions, and reporting, and asked whether she had drugs in her vehicle *before* he requested consent to search the vehicle. Accordingly, the officer's request to search was not made contemporaneously with the conclusion of the traffic stop.

In sum, the officer exceeded the scope of a permissible investigation by continuing to detain Duncan and asking for her consent to search after he completed the traffic stop. Accordingly, the trial court erred in denying Duncan's motion to suppress.

*Judgment reversed. Doyle, P. J., concurs and Dillard, J., concur*s in judgment only.

A14A1927. DUNCAN v. THE STATE

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. *See* Cout of Appeals Rule 33 (a).