**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 24, 2020**

# In the Court of Appeals of Georgia

A20A0248. THE STATE v. DRAKE.

PER CURIAM.

The State appeals from an order of the Jackson County Superior Court granting a motion to suppress illegal narcotics discovered when, following a traffic stop, police conducted a search of Nickolas Brandon Drake's person. The State argues that in granting the motion to suppress, the trial court erred in finding: (1) that the search of Drake's person occurred as the result of police impermissibly prolonging the traffic stop; and (2) that police lacked a legal basis for expanding the scope of the traffic stop beyond its original purpose. For reasons explained more fully below, we find no error and affirm the trial court's order.

In reviewing a ruling on a motion to suppress, we bear in mind that the trial court functions as the trier of fact with respect to such a motion. *Sherod v. State*, 334

Ga. App. 314, 314 (779 SE2d 94) (2015). "And because the trial judge hears the evidence, the judge's findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them." Id. (punctuation omitted). Accordingly, on appeal from the grant or denial of a motion to suppress, this Court construes the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility will be adopted unless clearly erroneous. *Watts v. State*, 334 Ga. App. 770, 771 (780 SE2d 431) (2015).

So construed, the evidence shows that Sergeant Christopher Holly of the Commerce City Police Department performed a traffic stop of a vehicle driven by Drake after witnessing an improper lane change. During that stop, police performed what they contended were consensual searches of Drake's car and person. Based on items discovered during those searches, Drake was arrested and charged with possession of oxycodone and morphine, as well as a violation of Georgia's open container law (OCGA § 40-6-253).

Prior to trial, Drake moved to suppress the items found during the search of his car and person. Evidence presented at the hearing on that motion showed that while speaking with Drake at the outset of the traffic stop, Holly thought he smelled a faint

2

odor of alcohol, indicating Drake may have been drinking. When a second Commerce police officer arrived at the scene, Holly asked that officer to speak with Drake to determine if she could smell alcohol.[1] A third Commerce police officer came to the scene while Holly was writing a warning citation for Drake. At Holly's request, the third officer asked Drake if he would consent to a search of his car, and Drake agreed. The third officer then took over the process of writing the traffic citation as Holly and the second officer searched Drake's vehicle. Approximately nine minutes after the traffic stop began, and as the search of the car was being conducted, the third officer finished writing Drake's warning ticket. None of the officers, however, provided that citation to Drake.

During the search of the car, officers located a container of alcohol that was approximately one half full, as well as a white substance that, in Holly's opinion, resembled crack cocaine. Holly conducted a field test on the white substance, which did not produce a positive result for cocaine. Both the field test and the search of Drake's car were completed no more than 14 minutes into the traffic stop. At that time, however, Holly did not provide the traffic citation to Drake but instead asked

---

[1] The second officer did not testify at the hearing, and the State presented no evidence that she detected the odor of alcohol. Moreover, Holly testified that based on his interactions with Drake, he did not believe Drake was an impaired driver.

3

for permission to search his person. Drake agreed and, at Holly's direction, emptied the contents of his pants pockets onto the trunk of his car. Holly then inquired about a bulge in a cargo pocket on the side of Drake's pant leg and then reached into the pocket, grabbing a small bottle that Drake acknowledged contained oxycodone and morphine.

Drake testified that he did not consent to the search of his car. He further stated that although he agreed to the search of his person, he did not feel that he had a choice, as he had not been told he was free to leave and he did not understand why he was being detained. Additionally, Holly stated that at the time he requested permission to search Drake's person, Drake was not free to leave the scene.

Following the hearing, the trial court entered an order denying Drake's motion in part and granting it in part. Specifically, the court denied that part of the motion relating to Drake's car, finding that Drake freely and voluntarily consented to that search. The court granted the motion, however, as it related to the search of Drake's person, finding that any consent Drake gave was neither voluntary nor freely given and was the result of an illegally prolonged traffic stop. In reaching this conclusion, the court rejected the State's argument that it had a reasonable basis for extending the traffic stop beyond its original scope. The State now appeals from that part of the

4

order granting Drake's motion to suppress the items found during the search of his person.

1. The State asserts that the trial court erred in finding that the search of Drake's person resulted from an illegally prolonged traffic stop. We disagree.

The United States Supreme Court has held unequivocally that the Fourth Amendment does not allow even a de minimis extension of a traffic stop beyond the investigation of the circumstances giving rise to the stop. *Rodriguez v. United States*, 575 U. S. 348, 356-357 (II) (135 SCt 1609, 191 LE2d 492) (2015). A stop "justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." Id. at 350 (punctuation omitted). See also *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SCt 834, 160 LE2d 842) (2005); *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004).

Here, because police sought consent to search Drake's car shortly after initiating the traffic stop and before any traffic citation issued, that request did not impermissibly prolong the stop and, therefore, did not violate the Fourth Amendment. See *Sommese v. State* , 299 Ga. App. 664, 670 (1) (d) (683 SE2d 642) (2009) (a traffic stop was not illegally prolonged where the evidence showed "that the officer obtained

5

consent to search [the] vehicle before he had completed the warning citation . . . and there was no evidence that the officer lengthened the detention" in an effort to obtain consent). See also *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). The same cannot be said, however, for the search of Drake's person.

The evidence shows that the traffic citation had been written and therefore the purpose of the stop completed at least five to six minutes before police finished their search of Drake's vehicle. By seeking Drake's permission to conduct a second search after that time (and at least seven minutes after the completion of the traffic citation), the State "exceeded the scope of a permissible investigation of the initial traffic stop." *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009) (punctuation omitted). In other words, detaining Drake further to request consent to search his person violated his Fourth Amendment rights. *Rodriguez*, 575 U. S. at 356-357; *Heard v. State*, 325 Ga. App. 135, 137-138 (1) (751 SE2d 918) (2013).

The State seeks to avoid this conclusion by arguing that Drake's consent to the search of his car "legally justifies any delay between the time necessary to fill out the citation and the time in which [Drake] granted consent to search his person." Put another way, the State argues that because Drake agreed to extend the traffic stop to allow for the search of his car, and because the consent to search Drake's person came

6

shortly after the conclusion of the vehicle search, the traffic stop was not impermissibly prolonged. We disagree.

Drake's consent to the search of his vehicle at the outset of the traffic stop does not demonstrate that he agreed to be detained further, after that search was completed. Under these circumstances, once the search of the vehicle was completed, the traffic stop was at an end and Holly could not thereafter detain Drake and ask for permission to conduct a second search unless Holly had "a particularized reason to suspect that [Drake was] engaged in some other criminal activity."[2] *Dominguez v. State*, 310 Ga. App. 370, 372 (714 SE2d 25) (2011). In the absence of such reasonable suspicion of criminal activity, Holly's continued detention of Drake exceeded the scope of the original traffic stop and was therefore constitutionally impermissible. *Felton*, 297 Ga. App. at 37. See also *Duncan v. State*, 331 Ga. App. 254, 257-258 (770 SE2d 329) (2015).

Additionally, the State's argument on this issue ignores the trial court's factual finding that Drake's consent to the search of his person was neither freely or voluntarily given. And the trial court's conclusion is supported by the record. In a

---

[2] As discussed infra in Division 2, the trial court found that Holly had no basis for suspecting that Drake was engaged in criminal conduct.

case such as this, the State bears the burden of proving that a defendant's consent to search is valid – i.e., that it was given freely and voluntarily. *Davis v. State*, 306 Ga. App. 185, 188 (2) (702 SE2d 14) (2010). Such consent is not valid where reasonable person would not have understood that he was free to refuse the request. Id. See also *Duncan*, 331 Ga. App. at 257. Here, Drake's testimony (which the trial court chose to credit) made clear that Drake believed he had no choice but to comply with Holly's request to search his person. Additionally, Holly's testimony confirmed that at the time he requested permission to search Drake's person, Drake was not free to leave. Accordingly, we find no error in the trial court's conclusion that the search of Drake's person resulted from an illegally prolonged detention and that the consent to that search was not given voluntarily. See *Felton*, 297 Ga. App. at 37-38.

2. The State contends that we should nevertheless reverse the trial court's grant of Drake's motion to suppress the search of his person, relying on the rule that a police officer may detain the subjects of a traffic stop "after the investigation of the traffic violation is complete . . . if the officer has a reasonable, articulable suspicion that the driver was engaged in other illegal activity." *Bodiford v. State*, 328 Ga. App. 258, 267 (2) (761 SE2d 818) (2014) (punctuation omitted). "[R]easonable articulable suspicion requires a particularized and objective basis for suspecting that a citizen is

involved in criminal activity." *Sherod*, 334 Ga. App. at 321 (1) (punctuation omitted). Moreover, it is the State who bears the burden of proving the existence of "specific and articulable facts" that provide the officer with an objective basis for suspecting that the subject of a traffic stop is involved in criminal activity. *Dominguez*, 310 Ga. App. at 374.

The State contends that police had a reasonable basis for suspecting that Drake was involved in illegal narcotics activity based on the following facts: Holly thought he smelled alcohol on Drake; police recovered a partially-consumed container of alcohol in Drake's car; inside of Drake's car, police found a white substance that Holly believed resembled crack cocaine; and in response to police questions, Drake stated that he had previously gotten "in trouble" because of methamphetamine. Like the trial court, however, we fail to see how any of these facts would lead a reasonable person to believe that Drake was involved in criminal activity related to illegal narcotics.

We first note that two of these factors relate to alcohol, which is not an illegal substance. And although Holly stated he thought he smelled alcohol emanating from Drake, he further testified that he was not "100 percent sure" of that perception. Additionally, Holly testified that early in his interaction with Drake, he determined

that Drake was not intoxicated. Specifically, Holly concluded that Drake may have had "a little bit to drink [,] but he [was] not . . . DUI." Furthermore, while Holly testified he believed the white substance found in Drake's car resembled crack cocaine, he also acknowledged that the field test on the substance did not indicate the presence of cocaine. Finally, the mere fact that a person admits that at some point in his past he "got in trouble" because of methamphetamine does not provide a basis for suspecting that the person is somehow currently involved in illegal narcotics activity. Accordingly, we agree with the trial court that police did not have knowledge of any facts justifying an extension of the traffic stop. See *Bodiford*, 328 Ga. App. at 267 (2). Cf. *Rowe v. State*, 314 Ga. App. 747, 752 (2) (b) (ii) (725 SE2d 861) (2012) (a reasonable basis existed for extending the traffic stop where the officer smelled an odor of burnt marijuana; the vehicle was a rental car which, under the terms of the contract, should have been returned two weeks earlier and was not permitted to be driven in Georgia; neither the driver nor the passenger was authorized to drive the rental vehicle, and neither appeared to know or was otherwise able to identify the individual authorized to drive the rental car).

For the reasons set forth above, we affirm that portion of the trial court's order granting Drake's motion to suppress the items seized during a police search of his person.

*Judgment affirmed. Division Per Curiam. All Judges concur.*