**May 6, 2024**

# In the Court of Appeals of Georgia

A24A0331. STATE v. MROZOWSKI.

LAND, Judge.

Christopher Mrozowski was indicted for charges including obstruction of an officer, terroristic threats, interference with government property, and possession of a drug related object arising from an incident where police approached him in a public pavilion after receiving an anonymous phone tip. Mrozowski filed a motion to suppress evidence obtained as a result of that interaction, arguing that the police impermissibly escalated the encounter to a second- or third-tier encounter without probable cause. The trial court found that the initial detention and subsequent detention of Mrozowski were illegal and granted the motion to suppress. The State

appeals from the trial court's grant of that motion. For the following reasons, we affirm.

On appeal from a motion to suppress, "the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *State v. King*, 227 Ga. App. 466, 467-468 (489 SE2d 361) (1997).

So viewed, the record shows that on September 21, law enforcement with the Swainsboro Police Department and Emanuel County Sheriff's Office were dispatched after receiving an anonymous call that there were two white males acting "suspicious [and] doing drugs" near a public pavilion in Swainsboro The caller also stated that one of the males was wearing a green shirt and had active warrants. When Officer Todd Purcell arrived at the pavilion, he saw two men sitting on the ground under a public pavilion. Nothing in the record indicates whether either individual was wearing a green shirt. Officer Percell testified that one of these men, later identified as Mrozowski, appeared to be unsteady and was "slurring his words just a little bit when he talked." Mrozowski denied being under the influence of alcohol, drugs or

medication. Officer Percell asked for a form of identification. Mrozowski handed him an ID card that did not belong to him and stated that he had just found it by the nearby CVS and had not yet had time to turn it into authorities. When Officer Percell asked for his actual ID card, Mrozowski "tried to step to walk away like he was gonna flee." However, his escape route was blocked by another officer who had just arrived and was standing in his path. The second officer yelled, "Hey, you okay over there?" to Officer Percell. Mrozowski then attempted to walk away in a different direction.

Officer Percell testified that Mrozowski "kept trying to put his hands in his pockets" as he attempted to walk away a second time.[1] Officer Percell told Mrozowski to take his hands out of his pockets. When he failed to comply, Officer Percell grabbed Mrowozski's right arm, and the second officer walked up and said "Who you talking to, boy?" Mrozowski then resisted and tried to pull his arm away so that he could leave, but was prevented from doing so. Officer Percell testified that he held Mrozwoski's arm because, based upon his police training, it was possible that Mrozowski could have had some kind of weapon in his pocket.

---

[1] Mrozowoski had already placed his hand in his pocket in front of Officer Percell on several occasions without objection from any officer— including to get the ID card--before Officer Percell grabbed his arm.

Officer Percell then told Mrozowski that he was going to "frisk" him for weapons. Mrozowski declined and told the officer that he did not have permission to search his pockets. When Mrozowski attempted to pull his arm away from the officer, he was then handcuffed by law enforcement due to "resisting arrest and pulling away." As he was being handcuffed, he spit in an officer's face.

After Mrozowski was handcuffed, the officers frisked the outside of his pockets and felt what "appeared to be a pipe that is commonly used to ingest drugs." At that time, the officer reached into Mrozowski's pocket and found the pipe. Mrowozski was then told that he was under arrest and, as he struggled with the officers on the way to the patrol vehicle, one of the officers' body cameras was jostled off of its mount, fell to the ground and broke. Once they arrived at the jail, Mrozowski threatened the officers with bodily harm and resisted being brought into the jail by kicking and headbutting the officers.

Mrozowski filed a motion to suppress the evidence of the pipe, his behavior during and after the arrest, and the broken body camera, arguing that the State improperly escalated a first-tier encounter to a third-tier encounter without the required probable cause to do so. The trial court granted the motion.

The State argues that the trial court erred by granting the motion to suppress because the officer had a "reasonable articulable suspicion" to conduct a second-tier detention and because Mrozowski "unlawfully resisted said search which resulted in his arrest." We are unpersuaded.

Georgia law identifies three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (Citation omitted.) *Walker v. State*, 314 Ga. App. 67, 69-70 (1) (722 SE2d 887) (2012). See *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

In a first-tier encounter, an officer "may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (Punctuation and footnote omitted.) *Ewumi v. State*, 315 Ga. App. 656, 658 (1) (727 SE2d 257) (2012). It is well-settled that a "citizen's ability to walk away from or otherwise avoid a police

officer is the touchstone of a first-tier encounter." (Punctuation and footnote omitted.) Id. at 658 (1). Indeed, a citizen "may refuse to answer and ignore the request and go on his way if he chooses, for this does not amount to any type of restraint." (Punctuation and footnote omitted.) Id. at 658 (1). See *Durden v. State*, 320 Ga. App. 218, 220 (1) (739 SE2d 676) (2013) ("So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required") (citation omitted).

Here, the encounter between the officer and Mrozowski was a first-tier encounter in which the officer stopped him and asked for his name and identification. See *Akins v. State*, 266 Ga. App. 214, 216 (1) (596 SE2d 719) (2004). However, Mrozowski's movement was restrained when he attempted to walk away from Officer Percell's questioning, and his exit was blocked by a second officer standing in his path. Faced with this situation, the trial court was authorized to conclude that "a reasonable person would feel compelled to conclude that he or she was not free to [walk] away and to leave." *Smith*, 288 Ga. App. 87, 88 (653 SE2d 510) (2007). See *In the Interest of J. B.*, 314 Ga. App. 678, 680-681 (1) (725 SE2d 810) (2012) (defendant's encounter with police officer escalated into a second-tier encounter when defendant's attempt

to leave the encounter was prevented by officers blocking his exit down the path); *Black v. State*, 281 Ga. App. 40, 46 (1) (635 SE2d 568) (2006) (defendant was entitled to walk away and refuse to answer officer's questions during a first-tier encounter and such behavior gave officer no grounds to grab him or arrest him for obstruction of justice). Thus, the moment Mrozowski was prevented from leaving Officer Percell's presence, his encounter with the police amounted to a detention which, in order to be lawful, must be supported by reasonable suspicion. See *State v. Lanes*, 287 Ga. App. 311, 313 (651 SE2d 456) (2007).

"Reasonable suspicion exists when an officer has a particularized and objective basis for suspecting that a citizen is or is about to be involved in criminal activity." *In the Interest of M. J. H.*, 239 Ga. App. 894, 895 (522 SE2d 491) (1999). Here, the officers had no objective basis for suspecting that Mrozowski was engaged in criminal activity at the time of his initial detention. Although there had been an anonymous tip that there were two men in the same area doing drugs, "that tip had not been corroborated by independent police investigation and there is no evidence in the record which otherwise reflects the reliability" of that tip. *Smith v. State*, 288 Ga. App. 87, 88 (1) (653 SE2d 510) (2007). Thus the anonymous call afforded no basis for

Mrozowski's detention. See *Register v. State*, 315 Ga. App. 776, 778 (1) (728 SE2d 292) (2012) (A tip provided by an informant of unknown reliability will not create a reasonable suspicion of criminal reliability unless the tip is detailed enough to provide some basis for predicting future behavior of the suspect and the details not available to the general public are corroborated by observations of the police); *Smith*, 288 Ga. App. at 88-89 (1) (officer did not have reasonable suspicion to detain defendant based upon anonymous tip that he was engaging in drug activity because officers had not corroborated those tips by independent investigation and there was no evidence which otherwise reflected reliability of those tips).

Further, Mrozowski's slurring of his words did not give rise to reasonable suspicion to require detention. There is no indication that officers saw Mrowozski engage in suspicious behavior or consumption of drugs, and the officer testified only that Mrowozski was unsteady and appeared intoxicated when spoken to. Acting unsteady and slurring words, alone, does not rise to misdemeanor public drunkeness. See OCGA § 16-11-41 (defining "public drunkenness" as being and appearing "in an intoxicated condition in any public place . . . which condition is made manifest by boisterousness, by indecent condition or act, or by vulgar, profane, loud or

unbecoming language." See also *Peoples v. State*, 134 Ga. App. 820, 821 (1) (216 SE2d 604) (1975) (because the public drunkenness statute is designed as a protection against the person's conduct and not his mere presence, "[m]erely being intoxicated is not sufficient;" rather, "the condition must be manifested by boisterousness, or by indecent condition or act, or by vulgar" or profane language) (citation and punctuation omitted). Although the State's appellate brief states that the officer had reasonable suspicion that Mrozowski was engaged in criminal activity because he readily handed the officer an identification card that he found earlier that evening, the officer's testimony at the motion to suppress hearing does not support the State's argument. Instead, the officer testified that he had reasonable, articulable suspicion to detain Mrozowski because he refused to give his identification card during the first-tier encounter (something he was not required to do), he was slurring his words as if intoxicated, and because of the information conveyed through an anonymous tip. For the reasons stated above, these facts are insufficient to show a reasonable, articulable suspicion.

Furthermore, even if we assumed for the sake of argument that the officer obtained reasonable, articulable suspicion to conduct a second-tier stop for

obstruction as a result of Mrozowski's failure to comply with the officer's request to frisk him or to remove his hands from his pockets, these acts of "obstruction" occurred *after* Mrozowski's initial attempt to leave the first-tier encounter with Officer Percell was thwarted. The officers' failure to allow Mrozowski to leave the first-tier encounter without having any reasonable, articulable suspicion that he was engaged in illegal activity was an impermissible detention and any "obstruction" that occurred after that point cannot be considered. See e. g., Ewumi 315 Ga. App. 658 (1) (officer's attempt to arrest defendant for obstruction is unlawful when defendant has the right to leave a first-tier encounter and the officer has no reasonable, articulable suspicion to detain him); *Brown v. State*, 301 Ga. App. 82, 85 (686 SE2d 793) (2009) (officer escalated first-tier encounter to second-tier encounter involving temporary restraint when he ordered defendant to remove his hands from his pockets without reasonable, articulable suspicion that defendant was or was about to be engaged in criminal activity)*; State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006) (because defendant had the right to leave a first-tier encounter with an officer, his exercise of that right—even if accomplished by running— cannot constitute

obstruction and thus, officers had no probable cause to arrest defendant for obstruction by flight).

Because the officers lacked reasonable, articulable suspicion to detain Mrozowski and prevent him from leaving the scene, the illegality of the detention in this case requires the suppression of any evidence obtained after the initial detention. See *Register*, 315 Ga. App. at 778 (officer lacked reasonable articulable suspicion to warrant traffic stop of van when officer stopped van based upon a tip that an individual in the van had engaged in a possible drug transaction and when the tip provided no prediction of future behavior, such that evidence obtained as a result of that illegal stop was suppressed). Accordingly, the trial court did not err in granting Mrozowski's motion to suppress.

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*