A11A1012. LILES v. THE STATE.
A11A1013. KILGO v. THE STATE.
(716 SE2d 228)

ELLINGTON, Chief Judge.

Following a bench trial on stipulated facts in the Superior Court of Henry County, co-defendants Christoper Liles and Zachary Kilgo appeal their convictions for possession of marijuana (less than one

---

ounce), OCGA § 16-13-30 (j) (1), and possession of Alprazolam, a schedule IV controlled substance, OCGA §§ 16-13-28 (a) (1); 16-13-30 (a). The appellants challenge the trial court's order denying their motion to suppress allegedly illegally seized evidence, raising identical issues. We consolidate these appeals for disposition in a single opinion, and, finding no error, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Punctuation and footnote omitted.) *Esposito v. State*, 293 Ga. App. 573 (667 SE2d 425) (2008).

In the late afternoon of December 4, 2009, a City of McDonough uniformed police officer received a tip from a drug task force agent that two men were involved in illegal narcotics activities in Room 178 of a Henry County hotel. The officer and a new trainee went to the room, and the officer knocked on the door. As the officer knocked, he smelled the strong odor of burnt marijuana. A man inside the room asked: "Who is it?" The officer identified himself as a police officer. The occupant of the room did not open the door, and the officer heard "a lot of shuffling around." The officer knocked on the door again, announcing "McDonough Police Department." A man inside the room pulled the curtains away from the front window to look out, and the officer recognized the man as Christopher Liles, a person with whom he was familiar "from previous drug transactions[.]" The officer advised Liles that he smelled marijuana smoke coming from the room and that Liles should let him in, at which point Liles let the officer into the room.

The officer observed that the hotel room was filled with marijuana smoke. The officer saw a second man he knew, Zachary Kilgo, lying on one of the beds. The officer told the men that he could see the marijuana smoke and asked them if there was "anything else in the room." The men told the officer that there was a "roach," the

butt of a marijuana cigarette, in the ashtray. The officer retrieved the roach and asked, again, if there was anything else in the room. Liles said: "No, there's nothing else. Feel free to search." The officer searched the room and found a small bag of marijuana and two sets of scales in the coffee table drawer. The officer, upon noticing that one of the ceiling tiles in the bathroom was slightly out of place, searched behind it and discovered three more bags of marijuana and six pills containing the prescription drug Alprazolam (Xanax).

The officer further testified that neither he nor the trainee had their weapons drawn when they approached or entered the room. The officer testified that, because he knew both Liles and Kilgo, he perceived neither as a threat. The officer did not arrest either man upon entering the room or put them in handcuffs, but considered them witnesses to a possible crime and detained them while he completed his investigation. Liles, however, testified that he only allowed the police in after they had threatened to kick the door down with guns drawn, that the police handcuffed them immediately, and that they immediately searched the room without asking for consent. On cross-examination, Liles admitted having given a sworn statement that he and Kilgo had both been smoking marijuana in the hotel room. The statement did not mention any threats or that the officers had their weapons drawn. In fact, Liles stated that the officer, whom he identified by name, "knocked on the door and I let him in."

1. Liles and Kilgo contend the trial court erred in finding that the officer legally entered their hotel room without a warrant. The record, however, including Liles' statement, supports a finding that Liles voluntarily admitted the officer into the hotel room.

> It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. A motel room is accorded the same Fourth Amendment considerations as a private home. . . . The U. S. Supreme Court, the Supreme Court of Georgia, and this Court have consistently held that even where probable cause exists, warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances.

(Citations and punctuation omitted.) *Welchel v. State*, 255 Ga. App. 556, 557-558 (565 SE2d 870) (2002).

358

The State argues at length that the police were authorized to enter the room because exigent circumstances existed, namely the risk that evidence would be destroyed. However, the trial court did not make such a finding in support of its order and the officer did not offer any testimony which would support a finding as to his reasonable belief that he entered the room or that he feared he might need to enter the room to prevent the destruction of evidence or for any other purpose that might be construed as an exigent circumstance.[1] Rather, the court concluded that "the officer had a right to be there [in the room]" apparently based upon Liles' having voluntarily admitted the officer into the room. Thus, the sole question before us is whether there is any evidence to support the trial court's finding that the officer's entry into the room was consensual.

When consent is offered as an exception to the warrant requirement, the State bears the burden of showing "that the consent was voluntarily given, and not the result of duress or coercion, [either] express or implied." (Citations and punctuation omitted.) *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975); see also *Gray v. State*, 296 Ga. App. 878, 882 (5) (b) (676 SE2d 36) (2009) (accord). Voluntariness is a question of fact to be determined by the trial court from all of the circumstances. *Code v. State*, 234 Ga. at 93 (III); *Maloy v. State*, 293 Ga. App. 648, 650-651 (2) (667 SE2d 688) (2008).

The circumstances present here support the trial court's finding, implicit in its order denying the motion to suppress, that Liles voluntarily consented to the entry into his hotel room. We note that "any contradiction between the officer['s] testimony and that of [Liles] presented a credibility issue for the trial court to resolve." (Punctuation and footnote omitted.) *Silverio v. State*, 306 Ga. App. 438, 446 (3) (702 SE2d 717) (2010). The officer's testimony and Liles' statement support a finding that the officer requested and received Liles' consent to enter the hotel room under circumstances that do not suggest either coercion or threat. "The presence of several police officers does not require a finding of coercion, although it merits close judicial scrutiny." (Footnote omitted.) Id. Here, the officer testified that neither he nor the trainee had their weapons drawn. They did not force their way into the room or threaten to do so. The officer was familiar with Liles and did not perceive him as a threat. Therefore, he simply asked for and received admittance. Further, the

---

[1] Exigent circumstances may be found where police reasonably perceive an emergency involving a threat to life or property, or where "an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others." (Citation omitted.) *Love v. State*, 290 Ga. App. 486, 488 (659 SE2d 835) (2008).

trial court was authorized to infer that Liles voluntarily admitted the officer into his room in the calculated hope that the officer would find only the small amount of marijuana that he had left in the ashtray, given the evidence that Liles was a known drug offender, that he had delayed opening the door, that the officer had heard sounds of "shuffling around," and that the bulk of the contraband had been hidden above a ceiling tile. Consequently, we conclude that the trial court was authorized to find that the State satisfied its burden of showing that Liles' consent to enter the hotel room was not the product of coercion, express or implied. See id.

2. Liles and Kilgo also contend that the trial court erred in finding that, after the officer entered the room, Liles voluntarily consented to a search of the hotel room. The evidence, however, supports the court's finding that Liles' consent was voluntary for the same reasons set forth in Division 1, supra. The officers entered the room with permission. They did not handcuff Liles or Kilgo, they simply asked if there was anything in the room other than the marijuana roach to which Liles had already led them. Liles volunteered: "No, there's nothing else. Feel free to search." The court was authorized to infer that Liles' consent to search was freely given in the calculated hope that the officer would not find the hidden contraband. See Division 1, supra.

We reject Liles' and Kilgo's argument that Liles' consent was merely acquiescence to a claim of lawful authority because he was placed under arrest as soon as the officers entered the hotel room, as this argument is not supported by the evidence. Rather, Liles testified that the officers never asked for his consent to search the premises, nor did he voluntarily give it. Having denied that the officer requested his consent, Liles cannot now claim that he simply acquiesced to the request based upon a show of authority. *Silverio v. State*, 306 Ga. App. at 446 (3). Furthermore, "there was no showing that the officers misrepresented their authority to enter and search against [Liles'] will, if necessary." (Punctuation and footnote omitted.) Id. For these reasons, the trial court did not err in concluding that the consent to search was voluntary, and it did not err in denying the co-defendants' motion to suppress.

*Judgments affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED AUGUST 3, 2011.

*Douglas P. Smith*, for appellants.

*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.