**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 8, 2013**

# In the Court of Appeals of Georgia

A12A2556. DURDEN v. THE STATE.

BARNES, Presiding Judge.

A police officer found several grams of crack cocaine and a large amount of cash on Steven Durden, resulting in his indictment on the charge of possession of cocaine with intent to distribute. Following the denial of Durden's motion to suppress the drugs and cash, we granted his application for interlocutory appeal. Discerning no error by the trial court, we affirm.

In reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. However, when evidence is uncontroverted and no question of witness

credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Punctuation and footnotes omitted.) *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

Viewed in the light most favorable to the trial court's ruling, the evidence showed that an officer with the City of Atlanta Police Department was on patrol one morning in an area known for drug activity. As the officer drove by in his patrol car, an unidentified woman, described by the officer as a "concerned citizen," flagged the officer down and stated that she had just seen a man standing on the corner selling drugs. She told the officer that the man was African-American and was wearing a blue hoodie jacket, black pants, and a blue hat, and she described exactly where he had been standing.

"At that point," the officer drove over to the corner. Although the officer did not observe any illegal activity, he saw a man standing there who matched the description provided by the woman. The man was later identified as Durden. When the officer got out of his patrol car, Durden turned and started to walk away. The officer asked Durden to stop so that he could speak with him. Durden complied. The officer then asked Durden for identification, which he was unable to produce.

2

According to the officer, Durden appeared nervous and "was fidgeting around with his hands in his pocket[s]." When the officer instructed Durden to remove his hands from his pockets, he did so. The officer then asked Durden if he was selling drugs, and he responded, "I don't sell no drugs, . . . , but go ahead, I don't have anything." The officer searched Durden's pockets and found 3.3 grams of crack cocaine and approximately $600 in cash.

Durden moved to suppress the drugs and money on the grounds that his initial encounter with the officer was a second-tier investigator stop, that the officer lacked reasonable suspicion to justify the stop, and that he had not voluntarily consented to the search of his pockets. After conducting an evidentiary hearing in which the officer was the sole witness, the trial court denied the motion to suppress. The trial court agreed with Durden that his initial encounter with the officer was a second-tier investigatory stop, but the court found that the stop was justified because the officer had a reasonable suspicion that Durden was involved in criminal activity based on the information provided to him by the concerned citizen. The trial court further found that Durden had voluntarily consented to having the officer search him.

1. Durden contends that the trial court erred in finding that the officer had a reasonable suspicion of criminal activity to justify a second-tier investigatory stop.

According to Durden, the unidentified woman who flagged down the officer was not a "concerned citizen" as that term is understood in our precedent, but rather an "anonymous tipster." Consequently, Durden maintains that the woman's reliability could not be presumed and that the information she supplied to the officer was insufficiently detailed to justify the stop.

At the outset, we note that the trial court did not err in finding that the initial encounter between the officer and Durden rose to the second-tier. "There are at least three tiers of police-citizen encounters: (1) consensual encounters; (2) brief investigatory stops that require reasonable suspicion; and (3) arrests that must be supported by probable cause." (Citation and footnote omitted.) *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citation and punctuation omitted.) *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012). But a police-citizen encounter rises to the level of a second-tier investigatory stop "if the officer restrains the citizen's movement by physical force, command, or show of authority." (Citation and punctuation omitted.) *Smith v. State*, 288 Ga. App. 87, 88 (653 SE2d 510) (2007).

4

Here, there was evidence that the officer called out to Durden as he was walking away and told him to stop so that he could speak with him. Faced with this situation, a reasonable person would believe that he was not free to disregard the officer's command and go about his business. Durden's initial encounter with the officer thus constituted a second-tier investigatory stop. See, e. g., *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009) (encounter was second-tier where the officer told the defendant to "hold on[,] come here," and sit on the pavement, and then questioned him pursuant to a "field investigation"); *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000) (encounter was second-tier where officers "verbally commanded [the defendant] to stop and prevented him from entering his automobile"). Moreover, even if the officer's initial interaction with Durden could be characterized as a first-tier encounter, it escalated into a second-tier stop when the officer ordered Durden to remove his hands from his pockets. See *Brown v. State*, 301 Ga. App. 82, 84 (686 SE2d 793) (2009) ("What began as a first-tier encounter escalated into a second-tier stop when the officer told [the defendant] to remove his hands from his pockets."). Accordingly, the trial court committed no error in concluding that the encounter was a second-tier investigatory stop, and thus in requiring the State to prove that the officer had a reasonable suspicion that Durden

5

was involved in criminal activity to justify the stop. See *Dominguez v. State*, 310 Ga. App. 370, 373-374 (714 SE2d 25) (2011) (State carries the burden of proving that officers had reasonable suspicion to justify investigatory stop).

> To meet the reasonable suspicion standard, police must point, under the totality of the circumstances, to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting the particular person stopped of criminal activity. Accordingly, a general suspicion or a mere hunch is not sufficient to support an investigative stop. Although the primary means by which officers acquire reasonable suspicion is personal observation, information acquired from an informant that exhibits a sufficient indicia of reliability can also be the basis for reasonable suspicion.

(Citations and punctuation omitted.) *Slocum v. State*, 267 Ga. App. 337, 337-338 (599 SE2d 299) (2004).

If the informant is a "concerned citizen" as that term is used in our precedents, the information provided to the police is presumed to be reliable. See *Dominguez*, 310 Ga. App. at 374, n. 11. (noting that if record had contained evidence that informant was a "concerned citizen," then "the trial court might properly have concluded that the information provided to the deputies was presumptively reliable"); *Penny v. State*, 248 Ga. App. 772, 775 (2) (b) (547 SE2d 367) (2001) ("[A] law-abiding concerned

6

citizen has a built-in credibility and is deemed to be reliable.") (citation omitted). In contrast, if the informant is an "anonymous tipster," the information provided to the police must be "detailed enough to provide some basis for predicting the future behavior of the suspect," and the details must be corroborated by the police for the tipster's reliability to be established. *Register v. State*, 315 Ga. App. 776, 778 (728 SE2d 292) (2012). See also *Slocum*, 267 Ga. App. at 338 (information provided by anonymous tipster "may exhibit sufficient indicia of reliability if it provides details correctly predicting a subject's not easily predicted future behavior, or if it provides other details which police corroborate as showing similar inside information about the subject's affairs") (citations and punctuation omitted). Whether an informant is a concerned citizen or an anonymous tipster turns on the facts and circumstances of the case, not the label applied to the informant by the State or the testifying officers. See *Fair v. State*, 284 Ga. 165, 172 (3) (b) (664 SE2d 227) (2008).

We conclude that there was evidence to support the trial court's finding that the unidentified woman who flagged down the officer fell into the category of a concerned citizen rather than an anonymous tipster. Generally, as the terminology itself implies, we have distinguished a concerned citizen from an anonymous tipster by the fact that the identity of the citizen is known to the police. See *Register*, 315 Ga.

7

App. at 778, n. 1 (728 SE2d 292) (2012) ("It is true that when hearsay information is supplied by an *identified* interested citizen, the citizen's credibility is not as suspect and the analysis is not as stringent as when information is given by an anonymous tipster") (citation and punctuation omitted; emphasis in original); *Slocum*, 267 Ga. App. at 338 ("Where the information is provided to police by an informant who is either an identified interested citizen or an identified victim of a crime, there is a presumption of reliability.").

Significantly, however, we have held that a citizen who witnesses criminal activity and then immediately reports it *in person* directly to a police officer also can be deemed a concerned citizen, even if her identity is not known to the police. See *Riding v. State*, 269 Ga. App. 289 (603 SE2d 776) (2004); *State v. Noble*, 179 Ga. App. 785 (347 SE2d 722) (1986). See also *Register*, 315 Ga. App. at 778, n. 1 (distinguishing anonymous tip from one "where [the] individual reported to [the] police in person"); *State v. Williams*, 225 Ga. App. 736, 738 (2) (484 SE2d 775) (1997) (distinguishing anonymous tip from one where "the citizen spoke directly to the investigating officer"). As we have explained, face-to-face communication is "inherently more reliable than an anonymous telephone tip because the officer receiving the information had the opportunity to observe the informant's demeanor

8

and perceived credibility." *Cole v. State*, 282 Ga. App. 211, 213 (638 SE2d 363) (2006).

In the present case, there was evidence that the woman in question spoke directly to the officer while he was out on patrol, describing the suspect involved in the illegal drug activity that she had just witnessed and his location. Under these circumstances, the trial court was authorized to deem the woman a concerned citizen whose reliability could be presumed. See *Riding*, 269 Ga. App. at 290-291; *Noble*, 179 Ga. App. at 785-786. After speaking with the concerned citizen, the officer immediately corroborated the basic facts that she had supplied to him. The in-person report of the concerned citizen, along with the officer's immediate identification of Durden as matching the description reported by the concerned citizen, "must certainly be considered a reasonable and articulable basis for a suspicion by [the officer] that [Durden was selling drugs]." *Riding*, 296 Ga. App. at 291, quoting *Noble*, 179 Ga. App. at 785. See *Goodman v. State*, 210 Ga. App. 369, 370 (436 SE2d 85) (1993) (upholding investigatory stop where unidentified woman, an "apparent concerned citizen," approached two police officers and described individuals and car involved in illegal drug activity in a nearby area, and the officers immediately proceeded to that area and corroborated the basic facts provided by the woman). Thus, contrary to

9

Durden's assertion, the trial court was authorized to find that the officer could briefly detain him for the limited purpose of investigating whether he was in fact selling illegal drugs. See *Riding*, 296 Ga. App. at 290.[1]

2. Durden also argues that the trial court erred in finding that he voluntarily consented to having the officer search him. Specifically, Durden maintains that his statement to the officer to "go ahead" was too ambiguous to authorize a search of his person, and that, at best, he merely acquiesced to the officer's authority rather than freely consented to a search.

> The State has the burden of proving the validity of a consensual search and must show the consent is given "voluntarily." Consent which

---

[1] This case is distinguishable from those involving an anonymous telephone tip rather than a face-to-face communication. See *Moreland v. State*, 204 Ga. App. 218 (418 SE2d 788) (1992); *Swanson v. State*, 201 Ga. App. 896 (412 SE2d 630) (1991); *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826) (1990). Furthermore, this case is distinguishable from *Rucker v. State*, 276 Ga. App. 683 (624 SE2d 259) (2005), relied upon by Durden. In *Rucker*, we concluded that the tipster, who was known to the officer receiving the tip, did not fit the definition of a concerned citizen whose reliability could be presumed because "the officer testified that he had arrested the tipster in the past." Id. at 684 (1). In that context, we concluded that the tipster was best described as "a known informant of unknown reliability." Id. Similarly, in *Tiller v. State*, 261 Ga. App. 363, 365 (582 SE2d 536) (2003), we concluded that the tipster was an "informant of unknown reliability" rather than a concerned citizen of presumed reliability, because the evidence showed that the tipster had been present at a gang-related fight and supplied the tip only after an officer had arrived on the scene and intervened to stop the fight.

10

is the product of coercion or deceit on the part of the police is invalid. Consent is not voluntary when it is the result of duress or coercion, express or implied.

(Footnote omitted.) *Hamby v. State*, 317 Ga. App. 480, 483 (731 SE2d 374) (2012).

The evidence showed that when the officer asked Durden if he was selling drugs on the corner, Durden responded, "I don't sell no drugs, . . . , but go ahead, I don't have anything." Construing Durden's response as consent to search, the officer then reached into Durden's pockets and found the drugs and cash. The officer testified that when speaking with Durden, he did not have his gun drawn and did not physically restrain or threaten Durden in any manner.

In light of this record, the trial court was authorized to find that Durden consented to having the officer search him. Durden's statement telling the officer to "go ahead, I don't have anything," when viewed in context, could reasonably be construed as authorizing a search of his person. Furthermore, the trial court was authorized to find that Durden's consent was freely and voluntarily given. There is simply no evidence in the record of coercion, duress, or deceit. And Durden's consent was not merely acquiescence to a claim of lawful authority by the officer, given that Durden spontaneously gave his consent without the officer ever having asked to

conduct a search. See *Liles v. State*, 311 Ga. App. 355, 359 (2) (716 SE2d 228) (2011) (defendant's consent to search was not mere acquiescence to a claim of lawful authority, where there was testimony that the officer never asked for his consent and that the defendant had volunteered to allow the search). For these reasons, the trial court did not err in concluding that the consensual search was valid and in denying the motion to suppress. See *Gray v. State*, 296 Ga. App. 878, 883 (676 SE2d 36) (2009) (concluding that consent was valid where defendant "sua sponte gave her consent to the search"); *Noland v. State*, 178 Ga. App. 486, 488-489 (2) (343 SE2d 763) (1986) (concluding that consent was valid where "the idea to search . . . appears to have originated with the [defendant] himself") (physical precedent only).

*Judgment affirmed. McFadden and McMillian, JJ., concur.*

12