**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 8, 2017**

# In the Court of Appeals of Georgia

A16A1843. RAY v. THE STATE.

RAY, Judge.

After a stipulated bench trial, Nicholas Ray was convicted on four counts of sexual exploitation of children and one count of tampering with evidence. He appeals from the judgment of conviction and sentence, asserting error in the trial court's denial of his motion to suppress. For the reasons that follow, we affirm.

The evidence presented at the hearing on the motion to suppress shows that in September of 2014, Agent Harrell of the Georgia Bureau of Investigation (GBI) was able to obtain downloads of child pornography from a computer that had an internet protocol (IP) address that was associated with a house located at 9 Couch Road in Senoia, Georgia. Agent Harrell turned his findings over to Agent Jackson, who was assigned to the GBI's Child Exploitation and Computer Crimes Unit. After viewing

the downloads personally to determine that they were child pornography, Agent Jackson sought and obtained a search warrant for the residence, which was determined to belong to Shelly Dvorak.[1]

When Agent Jackson executed the search warrant at Dvorak's residence, Dvorak and her three children were present.[2] Dvorak informed Agent Jackson that neither she nor her children had ever viewed any child pornography or made any searches on the internet for anything related to child pornography. After questioning Dvorak and her children, and after examining all of their computers and digital devices, Agent Jackson confirmed that there was no evidence of child pornography at Dvorak's residence. Nor was there any evidence that there had been any attempt to access child pornography on any of their computers or digital devices. After determining that Dvorak's wireless internet router was password protected, Agent Jackson asked Dvorak if she had given anyone else the password to access her internet router, and Dvorak stated that she had given the password to her neighbor, Ray. Although Dvorak stated that other neighbors had used her internet in the past,

---

[1] Ray does not challenge the sufficiency of the search warrant for Dvorak's residence.

[2] The evidence shows that Dvorak was divorced, and that she and her three children were the sole occupants of the residence.

Dvorak specifically identified Ray as the neighbor who would often park his vehicle in her driveway and sit there for hours using her internet, and that he had recently done so in the days preceding the issuance of the search warrant for her residence.

Based on the information that Dvorak had given her, Agent Jackson and two other GBI agents went to Ray's residence to conduct a "knock and talk." When Agent Jackson approached Ray and informed him that she wanted to speak with him about an investigation involving computers, Ray declined to speak with her and closed his front door. Accordingly, Agent Jackson went to get a search warrant for Ray's residence.

In her application and sworn affidavit in support of the search warrant for Ray's residence, Agent Jackson stated, in pertinent part, as follows:

> On Friday, October 3, 2014, SPECIAL AGENT (SA) CYNTHIA JACKSON received a peer to peer case from SA JOHN HARRELL. Previously, SA HARRELL downloaded videos of suspected child pornography by using Ares, a file sharing program. . . . The suspect IP address was 24.159.106.241[.] . . . SA JACKSON viewed the videos. One of the videos depicted a boy, approximately between the ages of 11 and 13, masturbating. Another video depicted a boy, approximately between the ages of 11 and 13, with another person ejaculating his penis. File names of the downloads included the following: 14 y o boy in boxers, webcam jack off.mpeg [and] bibcam - boy 12 cums with

3

sound kdv pjk.mpg[.] The IP address 24.159.106.241 was associated with Charter Communications. SA HARRELL sent Charter Communications a subpoena and requested subscriber information for specific dates and times for the aforementioned IP address. The results showed SHELLY DVORAK as the subscriber with an address of 9 Couch Rd., Senoia, Georgia. . . . On Friday, October 17, 2014, SA JACKSON, along with other GBI Agents executed a search warrant at 9 Couch Rd., Senoia, Georgia. Upon entry, SA JACKSON made contact with SHELLY DVORAK and her 3 children. . . . SA JACKSON interviewed DVORAK who essentially stated the following: She had been living at the residence for approximately 7 years. She was divorced [from her former husband] in May, 2014. DVORAK confirmed Charter Communications as her Internet Service Provider. Only DVORAK and her 3 sons . . . lived at the residence. DVORAK stated that there were multiple digital devices in the residence including an iPad, Kindle, laptop [computer], desktop [computer], and 3 phones. . . . She had never viewed or searched for pornography or child pornography. DVORAK stated that her Wi-Fi was password protected. However, she stated that her neighbor, NICHOLAS RAY, had her Wi-Fi password and often parked in her driveway and/or sat at her house for hours using her internet service. It was not uncommon for RAY to be at DVORAK'S residence for hours throughout the week using her internet service. DVORAK had known RAY for approximately 7 years and he had been using DVORAK'S internet service for approximately 5 years. DVORAK stated that RAY had recently used the internet service this week. SA JACKSON spoke to [DVORAK'S] 3 children and they did not use the internet to view pornography or child pornography. SA JACKSON

4

along with SA BROOKE LINDSEY and SA ROBERT DEVANE went to 285 Couch Rd., Senoia, Georgia to make contact with NICHOLAS RAY. RAY refused to answer any of SA JACKSON'S questions. SA JACKSON received intelligence results for RAY. RAY was previously arrested for false imprisonment and sexual battery. Based on the information provided by SHELLY DVORAK and the fact that NICHOLAS RAY used DVORAK'S internet service nearly every week for hours at a time, SA Jackson is requesting a search warrant for 285 Couch Rd., Senoia, Coweta County, Georgia.

In addition to her affidavit, Agent Jackson gave sworn oral testimony to the magistrate judge in support of her application for the search warrant for Ray's residence. She offered testimony about the details of her investigation leading up to the request for the search warrant, the evidence that she obtained, her questioning of Dvorak and her children, Dvorak's level of cooperation, the fact that no evidence of child pornography or attempts to access such material was found on the computers and digital devices at Dvorak's residence, and the fact that Ray had used Dvorak's password protected internet service while parked in her driveway during the timeframe the child pornography was downloaded. After considering Agent Jackson's affidavit and testimony, the magistrate issued the search warrant.

5

As Agent Jackson was executing the search warrant at Ray's residence, another GBI agent initiated a traffic stop of Ray's pickup truck. During this traffic stop, the GBI agent observed a laptop computer in Ray's truck, and he relayed that information to Agent Jackson. This information was consistent with Dvorak's statement that Ray had recently accessed her internet service while sitting in his truck in her driveway. Accordingly, Agent Jackson sought and obtained a separate search warrant for the search of the truck. The affidavit for the search warrant for the truck was based largely on the same information that was presented to the magistrate in support of the search warrant for Ray's residence, with the additional fact that the GBI agent had observed the laptop in Ray's truck.

GBI Agents completed their search after Ray arrived at the residence. When GBI agents seized the laptop computer from Ray's truck, they discovered that a file-shredding program was running on the laptop, actively erasing files from the hard drive. Nevertheless, the GBI was able to recover several files containing child pornography from the laptop, including one of the videos that was specifically referenced in the affidavits for the search warrants.

1. Ray asserts that the trial court should have granted his motion to suppress evidence obtained during the execution of search warrants for his home and his vehicle, contending that the information presented to the magistrate judge by law enforcement was inadequate to establish probable cause to support the warrants. We disagree.

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit [and testimony] before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

(Citations omitted.) *Galloway v. State*, 332 Ga. App. 389, 389-390 (772 SE2d 832) (2015). Where, as here, the affiant for the search warrant relies on information obtained from an informant, "probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the

7

informant's veracity or reliability. However, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (Citations and punctuation omitted.) Id. at 390.

(a) After the execution of the initial search warrant at Dvorak's residence failed to produce any evidence of child pornography, the GBI relied on the information provided by Dvorak to turn their investigation toward Ray. Ray argues that the information provided to the magistrate judge in support of the subsequent search warrants for his residence and truck failed to establish Dvorak's reliability. We disagree.

As an initial matter, we note that the unique circumstances of this case create somewhat of an ambiguity as to whether Dvorak should be deemed a "concerned citizen" or an "informant." If the person providing information regarding possible criminal activity to law enforcement is a law-abiding "concerned citizen" whose identity is known to the police, the information provided to law enforcement is presumed to be reliable. See *Durden v. State*, 320 Ga. App. 218, 221 (1) (739 SE2d 676) (2013). In contrast, if the person providing such information is an anonymous informant or a person of unknown reliability, the information provided must be

8

independently corroborated by law-enforcement. *Manzione v. State*, 312 Ga. App. 638, 641 (a) (719 SE2d 533) (2011). We need not make this distinction here, however, as the information provided to the magistrate was sufficient to establish reliability under either standard.

Although Dvorak may have been previously unknown to Agent Jackson before the execution of the search warrant at her residence, Agent Jackson was able to assess Dvorak's credibility during questioning. She learned that Dvorak was a divorced mother of three children, and that she and her children were the only ones who lived at her residence. Dvorak denied having any child pornography, and Agent Jackson was able to corroborate this information upon searching her residence and examining all of the computers and digital devices located there. Agent Jackson noted that Dvorak was "[v]ery cooperative, [and] very straight forward," and that Dvorak "offered any and all information [that was requested]." Implicit in these facts is that Dvorak was a law-abiding woman who would be justifiably concerned upon learning that her wireless internet router was being used to distribute child pornography. Accordingly, she immediately informed Agent Jackson that she had given Ray access to her password-protected internet service, that he would often park his vehicle in her

9

driveway and sit there for hours using her internet, and that he had recently done so in the days preceding the issuance of the search warrant for her residence.

We have held that face-to-face communication between an informant and a law enforcement officer is inherently more reliable than information from an anonymous source because the officer receiving the information "had the opportunity to observe the informant's demeanor and perceived credibility." (Citation and punctuation omitted.) *Durden*, supra at 222 (1). Furthermore, when a person observes certain activity and then later learns that such activity is relevant to a criminal investigation and immediately reports it *in person* directly to a law enforcement officer, we see no reason why that person cannot be deemed a concerned citizen. See generally, id. ("a citizen who witnesses criminal activity and then immediately reports it in person directly to a police officer also can be deemed a concerned citizen, even if her identity is not known to the police") (citations omitted). Furthermore, Dvorak's information that Ray used her internet service while sitting in his truck in her driveway during the relevant timeframe was corroborated when a GBI agent observed the laptop computer in Ray's truck during a traffic stop.

As all of the above facts were provided to the magistrate judge during the warrant application process, we find no error in the magistrate judge's determination,

under the totality of the circumstances, that the information supplied by Dvorak was reliable.

(b) Ray also asserts that the information provided by Dvorak was insufficient to establish probable cause to believe that he was in possession of child pornography. He argues that there were other possible explanations for his use of Dvorak's internet service, that Dvorak never stated that she observed him searching for or downloading child pornography, and that other neighbors may have accessed her internet service. His arguments are unpersuasive.

In making such arguments, Ray apparently wishes to equate the standard required for probable cause for a search warrant with the standard required for conviction. This is incorrect. A magistrate does not analyze the information in a warrant affidavit using the "beyond a reasonable doubt" standard, but rather makes a common-sense decision whether, given all the circumstances set forth in the affidavit, a "fair probability" exists that evidence will be found in a particular place. *Galloway*, supra at 389. Although Dvorak stated that other neighbors had used her internet in the past, Dvorak specifically identified Ray as the neighbor who had accessed her password protected internet service during the approximate timeframe the child pornography was downloaded.

11

Furthermore, the establishment of probable cause was not limited to the information provided by Dvorak. Here, the information provided to the magistrate judge shows that the GBI detected child pornography being distributed from Dvorak's IP address, that no evidence of child pornography was located during the search of Dvorak's residence, computers, and digital devices, *and* that Ray accessed her password-protected internet service during the timeframe when the GBI detected the distribution of child pornography through Dvorak's IP address.[3] Based on the totality of the circumstances, we conclude that the magistrate judge had a substantial basis for concluding that probable cause existed to issue the search warrants at issue.

(c) Lastly, Ray contends that the information that Agent Jackson provided in her affidavit to the magistrate judge concerning Ray's prior arrest for sexual battery and his refusal to speak with the GBI agents was irrelevant to the determination of probable cause for the search warrants. However, the magistrate judge testified at the hearing on the motion to suppress that he did not consider Ray's prior arrest in determining the issue of probable cause. Furthermore, we have reviewed the magistrate judge's testimony in its entirety, and it is clear that he focused on the

---

[3] As to the application for the search warrant for Ray's vehicle, there was the additional evidence that the GBI officer had seen a computer in his pickup truck.

12

information concerning Ray's frequent use of Dvorak's internet during the timeframe in which the child pornography was downloaded in determining probable cause. Accordingly, we find no basis for reversal.

*Judgment affirmed. Doyle, C. J., and Andrews, J., concur*.