**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 18, 2025**

# In the Court of Appeals of Georgia

A24A1709. REECE v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Tammy Reece was convicted of trafficking in methamphetamine, driving under the influence of drugs, and disregarding a traffic control device. She appeals, arguing that the trial court erred in denying her motion to suppress evidence obtained after her stop for the traffic violation was improperly prolonged by the arresting officer. Because the officer had reasonable suspicion of other crimes, he lawfully prolonged the traffic stop to investigates those crimes. So we affirm the trial court's denial of the motion to suppress.

1. *Motion to suppress*

In reviewing a trial court's ruling on a motion to suppress, we apply three fundamental principles:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. . . . [T]his standard of review requires us to focus on the findings of fact made by the trial court in its order and the evidence supporting those findings, rather than other evidence gleaned from the record, construing it in favor of upholding the trial court's order.

*State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019) (citation, punctuation, and footnote omitted).

So construed, the evidence supports the trial court's following findings of fact as set forth in its orders denying the motion to suppress and the motion for new trial. While on duty, a police officer saw Reece commit a traffic violation by driving her vehicle straight through a right-turn-only lane. The officer stopped the vehicle and asked for identification from Reece and the lone passenger in the car. Reece provided valid identification, but the passenger said that she did not have identification and gave the name "Holly Turner." The officer returned to his vehicle to search for the name

in the Georgia Crime Information Center database, and discovered that the passenger did not resemble the photograph associated with that name.

Suspecting that the passenger had given a false name, the officer approached Reece's vehicle again and asked the passenger for her middle name. Reece, instead of the passenger, interjected that the passenger's middle name was "Denise." Concerned that both car occupants were now hiding the passenger's identity, the officer placed the passenger in his patrol vehicle and called for a mobile fingerprint unit to come to the scene to determine her identity. While in the patrol vehicle, the passenger admitted that her real name was Susan Hardigree, and the officer determined that she had outstanding arrest warrants.

Reece subsequently consented to a search of her vehicle, which did not result in the discovery of any contraband. The officer then told Reece that he was going to give her a traffic citation and that she had also possibly committed an obstruction offense by giving him a false middle name for Hardigree. When the officer returned to his patrol vehicle to complete the traffic citation, Hardigree asked if he had searched Reece and told the officer that Reece had methamphetamine hidden in her pants.

The officer then called for a female officer to come to the scene to search Reece. While waiting for the female officer, Reece told the officer that she had used methamphetamine the prior day, but she then recanted and said she had taken a diet pill. The officer observed that Reece's speech was garbled and that her eyelids were heavy throughout the interaction. The female officer arrived and Reece consented to a search of her waistline and bra, but nothing was found.

The officer suspected that Reece was impaired and asked her to perform field sobriety tests. Reece consented, and based on her performance, the officer placed her under arrest for driving under the influence of drugs. Reece was then taken to a jail facility, where a bag of methamphetamine was found on her person while she was being processed.

2. *Prolonged traffic stop*

Reece concedes that the officer lawfully stopped her vehicle based on his observation of her driving straight through a right-turn-only lane. See *Hall v. State*, 351 Ga. App. 695, 699 (1) (832 SE2d 669) (2019) ("when an officer observes a traffic offense, the resulting traffic stop does not violate the Fourth Amendment of the United States Constitution") (citation omitted). Reece also concedes that the officer

4

did not improperly prolong the traffic stop by requesting identification from her and her passenger or by investigating the false name given by the passenger. See *McNeil v. State*, 362 Ga. App. 85, 89 (866 SE2d 249) (2021) ("officers may, without unreasonably prolonging a stop, . . . determine if there are any outstanding warrants for the driver or the passengers") (citation and punctuation omitted); *Sexton-Johnson v. State*, 354 Ga. App. 646, 650 (839 SE2d 713) (2020) (1) (a) (839 SE2d 713) (2020) (officer "was authorized to request identification from the [vehicle] occupants, and when the back-seat passenger gave false information about her identity, the officer had probable cause to arrest her"); *State v. Price*, 322 Ga. App. 778, 780 (746 SE2d 258) (2013) ("[t]he time reasonably necessary to accomplish the purpose of a traffic stop includes the time necessary to run a computer check on the driver and on any passengers"). And Reece does not contest the validity of the consent search of her vehicle during the traffic stop. See *Blitch v. State*, 281 Ga. 125, 125-126 (1) (636 SE2d 545) (2006) ("If a driver is questioned and gives consent [to search] while she is being lawfully detained during a traffic stop, there is no Fourth Amendment violation.") (citation and punctuation omitted); *Flores v. State*, 347 Ga. App. 174, 178 (2) (818

SE2d 90) (2018) ("the traffic stop had not ended when the officers obtained consent to search the car").

Instead, Reece argues that after the officer completed those tasks, he unlawfully prolonged the traffic stop based solely on Hardigree's unreliable tip that Reece had methamphetamine hidden on her person. We disagree because the totality of the circumstances justified the officer in prolonging the stop to investigate suspected illegal activity.

"The United States Supreme Court has held unequivocally that the Fourth Amendment does not allow even a de minimis extension of a traffic stop beyond the investigation of the circumstances giving rise to the stop." *State v. Drake*, 355 Ga. App. 791, 793 (1) (845 SE2d 765) (2020). But "information learned during the course of a traffic stop may provide a law enforcement officer with a reasonable, articulable suspicion to prolong the traffic stop." *Baggett v. State*, 367 Ga. App. 851, 858 (1) (b) (888 SE2d 636) (2023) (citation and punctuation omitted).

> It is well established that an officer may continue to detain a driver after the investigation of the traffic violation is complete . . . if the officer has a reasonable, articulable suspicion that the driver was engaged in other illegal activity. And reasonable, articulable suspicion must be based on more than a subjective, general suspicion or hunch. The detention must be justified by specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant the detention, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.

*Snellings v. State*, 371 Ga. App. 795, 799-800 (903 SE2d 177) (2024) (citations, punctuation, and emphasis omitted). Accord *McNeil*, supra at 90 ("for the continued detention to pass constitutional muster, the officer must have a reasonable articulable suspicion of other illegal activity") (citation and punctuation omitted). In making such a determination, we consider

> [t]he officer's knowledge . . . based on the totality of the circumstances. The reasonable suspicion necessary to justify such a [detention] is dependent upon both the content of information possessed by police and its degree of reliability. The standard takes into account the totality of the circumstances — the whole picture. Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.

*Blanks v. State*, 334 Ga. App. 626, 629 (778 SE2d 261) (2015) (citation and punctuation omitted). "Importantly, whether a given set of facts rises to the level of reasonable articulable suspicion of criminal activity is a legal question." *Snellings*, supra at 800 (citation and punctuation omitted). See *Flores*, supra at 177 (2) ("Whether a traffic stop was unreasonably prolonged may often be a fact-intensive

determination, but it is ultimately a holding of constitutional law that we review de novo.") (citation and punctuation omitted).

In this case, the totality of the circumstances included the officer observing Reece start to turn left while in a clearly marked right-turn-only lane and then adjust to drive straight through the turn-only lane; the officer's suspicion at the beginning of the traffic stop, based on Reece's driving and the way she talked to him during his initial approach, that she might be impaired; Reece giving the officer a false middle name for her passenger during the stop; and the passenger, after admitting her real name and the officer discovering that she had outstanding arrest warrants, then informing the officer that Reece had methamphetamine hidden in her pants. Under these circumstances, we find that the officer did not act arbitrarily or on a mere hunch, and instead detained Reece for further investigation based on reasonable, articulable suspicion of illegal drug activity.

Reece argues that Hardigree's tip that Reece had methamphetamine on her person did not create a reasonable suspicion because Hardigree, like the tipster in *Rucker v. State*, 276 Ga. App. 683 (624 SE2d 259) (2005), was an informant of unknown reliability. But the circumstances in *Rucker* were materially different from

8

those in the instant case. In *Rucker*, a police officer unlawfully stopped the defendant's vehicle based *solely* on a telephone tip from an informant of unknown reliability. Id. at 684 (1). But unlike the officer in *Rucker*, as discussed above, the officer in this case did not continue to detain Reece based solely on the tip from Hardigree. Rather, the totality of the circumstances known to him included Reece's traffic offense; her possible impairment; her passenger providing a false name; Reece also giving a false name for the passenger; and that passenger, after giving the officer her real name, also providing the information about drugs.

While Hardigree's tip alone may have been insufficient to create reasonable suspicion, the tip still had some indicia of reliability that authorized the officer to consider it within the context of the totality of the circumstances. Hardigree provided the tip to the officer in a face-to-face communication in his patrol vehicle. See *Ray v. State*, 340 Ga. App. 561, 566 (a) (798 SE2d 82) (2017) ("face-to-face communication between an informant and a law enforcement officer is inherently more reliable than information from an anonymous source"). Moreover, the fact that Hardigree had just been a passenger in Reece's vehicle raises a reasonable inference that she may have had "eyewitness knowledge of the alleged [methamphetamine], which supports the

tip's reliability[.]" *Blanks*, supra at 630 (1) (b) (citation and punctuation omitted). See also *Darden v. State*, 341 Ga. App. 368, 370 (1) (800 SE2d 36) (2017) ("once [occupant of defendant's vehicle got out and] stated that he had purchased cocaine from [defendant], the officers were authorized to detain the two men for further investigation"). Indeed, as stated in *Rucker*, "information provided by a known but untested informant[, like Hardigree,] has more reliability than an anonymous tip." *Rucker*, supra at 684 (1). Thus, the officer was not required to simply ignore Hardigree's tip, and instead he properly considered it within the context of all the other information that he had learned during the course of the stop.

We conclude that "the officer's conduct in prolonging the stop was reasonable given the objective facts known to the officer and the [totality of the] circumstances under which he was working." *Sherod v. State*, 334 Ga. App. 314, 320 (1) (779 SE2d 94) (2015) (citation and punctuation omitted). Because the officer had "reasonable articulable suspicion justifying the detention in this case, we affirm the [trial] court's denial of [Reece's] motion to suppress." *Rogers v. State*, 323 Ga. App. 647, 651 (747 SE2d 213) (2013).

*Judgment affirmed. Mercier, C. J., and Rickman, P. J., concur.*